UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ALAN MITCHELL,

Plaintiff,

v.

CITY OF WARREN, et al.,

Defendants.

_____/

Case No. 16-cv-10567

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS [13]**

**I. INTRODUCTION**

On February 16, 2016, David Mitchell ("Plaintiff" of "Mitchell")
commenced this action against the City of Warren and six City of Warren police
officers (collectively "Defendants"). Dkt. No. 1, pp. 1–2 (Pg. ID No. 1–2).
Mitchell's Complaint contains three counts, alleging that Defendants violated his
Fourth and Fourteenth Amendment rights by using excessive force during his
arrest on February 25, 2014. *See id.* at 3–9 (Pg. ID No. 3–9).

The matter is presently before the Court on Defendants' Motion to Dismiss
[13], pursuant to Federal Rules of Civil Procedure 12(b)(6), filed on April 14,
2016. Dkt. No. 13, p. 1 (Pg. ID No. 47). On June 6, 2016, the Court conducted a
hearing on the motion and heard oral argument from counsel. For the reasons

discussed herein, the Court **GRANTS** in part and **DENIES** in part Defendants'
Motion to Dismiss [13].

## II. BACKGROUND

On the evening of February 25, 2014, Mitchell was pulled over by City of
Warren police on suspicion of drunk driving. Dkt. No. 1, p. 3 (Pg. ID No. 3).
Mitchell was cited for the open intoxicants in his vehicle, but did not receive a
citation for driving under the influence. *See id*. After his car was impounded,
Mitchell continued his evening by walking to his friend Eddie Bush's ("Bush")
house and having Bush drive him to a "party store." *See id*.

Shortly thereafter, Bush was pulled over by City of Warren police because
of a burned out vehicle light. *See id*. Bush attempted to flee after being ordered
from the car for driving on a suspended license. *See id*. at 4 (Pg. ID No. 4). Since
Bush's vehicle was being impounded, police asked Mitchell to exit the vehicle and
searched him. *Id*. Mitchell alleges that the officers used excessive force when
moving him to the back of the police car, resulting in him falling down and hurting
his arm. *Id*. The police took Mitchell to the hospital, where he found out his arm
was broken. *Id*.

## III. LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting FED. R. CIV. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (2009) (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of his or her factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). However, the Court need not accept mere conclusory statements or legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678.

-3-

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## IV. DISCUSSION

In his Complaint, Mitchell asserts three claims: (1) that Defendants violated his Fourth Amendment rights by using excessive force against him; (2) that Defendants violated his Fourth Amendment rights by searching and seizing him without a warrant or probable cause; and (3) that the City of Warren committed constitutional violations. Dkt. No. 1, pp. 4–7 (Pg. ID No. 4–7).

Defendants seek to dismiss Mitchell's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for several reasons. Dkt. No. 13, pp. 14–15 (Pg. ID No. 60–61). First, Defendants argue that Mitchell failed to plead any specific claims against the individual officers named, despite his access to the police reports. *Id.* at 14 (Pg. ID No. 60). Second, they assert that Mitchell failed to articulate any state law claims against Defendants, other than the blanket statement

that he "brings claims under state law." *Id*. Third, Defendants claim that Mitchell does not state how his initial stop was unlawful. *Id*. Fourth, they contend that Mitchell failed to articulate how being asked to exit Bush's vehicle was unlawful. *Id*. And fifth, Defendants state that Mitchell does not have standing to assert that the stop of Bush was improper. *Id*. at 15 (Pg. ID No.15).

Additionally, Defendants assert that Mitchell's Complaint must be dismissed on the basis of qualified immunity. *Id*. Finally, Defendants ask that the Court order Mitchell to make a more definite statement under Federal Rule of Civil Procedure 12(e). *Id*. at 24 (Pg. ID No. 70).

### A.    Count I: Excessive Force

In Count I, Mitchell asserts a claim for excessive force under § 1983 stemming from a violation of the Fourth and Fourteenth Amendments to the United States Constitution. Dkt. No. 1, pp. 4–5 (Pg. ID No. 4–5). Specifically, Mitchell claims that he was subject to "pushing and pulling" from unnamed police officers, which resulted in him falling to the ground and breaking his arm. *Id*. Defendants do not dispute that Mitchell fell and broke his arm during the course of the second traffic stop, but instead contend that Mitchell's claim lacks requisite specificity. Dkt. No. 13, p. 14 (Pg. ID No. 60).

"[A]ll claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a

free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *See Graham v. Connor*, 490 U.S. 386, 394 (1989). When performing a "reasonableness inquiry" in an excessive force case, the Court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. This objective inquiry judges the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene, in light of the facts and circumstances surrounding him or her. *Id.* at 396–97. The reasonableness inquiry cannot be made by evaluating a specific officer's underlying intent or motivation, or by utilizing the 20/20 vision of hindsight. *Id.* "With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

To hold police officer liable for use of excessive force, the plaintiff must prove that (1) the officer actively participated in use of excessive force; (2) supervised the officer who used excessive force; or (3) or owed the victim duty of protection against use of excessive force. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

Here, Mitchell alleges that he "was pulled by the officers and pushed to place him in the back of a police car," and "[a]s a result of the excessive force when officers were pushing and pulling on [him] to place him in the police vehicle, he fell, and injured his wrist and suffered other injuries." Dkt. No. 1, p. 4 (Pg. ID No. 4). Although Mitchell named six officers in his Complaint, he does not specify which or how many Defendants used excessive force against him, how much force was used by each Defendant, or whether some of the Defendants did not use any force against him but failed to intervene on his behalf.[1]

Mitchell's response cites to *Young v. City of Highland Park*, No. 11-12780, 2011 WL 5215154 (E.D. Mich. Nov. 2, 2011), in support of his contention that this vague pleading style is sufficient to survive a 12(b)(6) motion. In *Young*, the Court allowed the plaintiff to bring a "far from thorough" excessive force claim against defendants "in the plural form," but advised the plaintiff's counsel to carefully consider their Rule 11 responsibilities and dismiss other defendants immediately after discovery revealed that claims could not be sustained. *Id.* at *2–3. *But see*

---

[1] The claim that officers failed to intervene is a new allegation Mitchell raises for the first time in his Response. *See* Dkt. No. 15, p. 11 (Pg. ID No. 105). His Response also specifies—for the first time—the number of officers who used force against him and their names, which it appears that he knew at the time of the Complaint's drafting because they were already listed as defendants, rather than "unknown police officers." *See id.*

*Jackson v. City of Highland Park*, No. 15-10678, 2015 WL 3409013, at *6 (E.D. Mich. May 27, 2015) (dismissing an excessive force claim, with leave to amend, where the complaint "fail[ed] to attribute any of the conduct to a specific Defendant," "leav[ing] the Court only to guess whether-and to what extent-the named Defendants actually contributed to the underlying constitutional violations.").

Although Mitchell's Complaint lacks specificity regarding facts that appear to be known by him based on his Response, the Court's "function is to construe a complaint in order 'to do justice[.]' " *See* FED. R. CIV. P. 8(e). "[I]n doing so [the Court] must look to the complaint 'as a whole' to see if it provides 'sufficient notice' of the claim." *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 543 (6th Cir. 2015). Defendants were put on notice enough to examine the police reports[2] for further information regarding the traffic stops. Accordingly, the Court will deny the Motion to Dismiss on Mitchell's excessive force claim. Mitchell is ordered to

---

[2] Defendants claim, evidenced by police reports, that Mitchell was still intoxicated at this point in the evening, slipped on the ice, and broke his arm. This claim will not be considered on a 12(b)(6) motion, where the Court is limited to the four corners of the Complaint. *See, e.g.*, *Linden v. City of Lansing*, No. 1:13-CV-638, 2013 WL 6858459, at *3 (W.D. Mich. Dec. 30, 2013) (declining to consider police reports as public records in reviewing a motion to dismiss under Rule 12(b)(6)).

amend his Complaint with the new facts and allegations expressed in his Response brief to cure the original Complaint's obvious deficiencies.

**B.      Count II: Unlawful Search and Seizure**

In Count II, Mitchell claims that his Fourth Amendment rights were violated when Defendants (1) "seized Plaintiff without probable cause or exigent circumstances"; (2) "illegally searched within Plaintiff' [sic] vehicle and Plaintiff' [sic] person and seized his vehicle"; and (3) "falsely arrested/detained/seized Plaintiff." Dkt. No. 1, p. 6 (Pg. ID No. 6). The Court will evaluate these claims by analyzing each traffic stop separately.

**1.  Search and Seizure During Second Traffic Stop**

In this first section, the Court will first confine its analysis of Mitchell's unlawful search and seizure claim to the second traffic stop, where Bush was driving. *See* Dkt. No. 15, p. 16 (Pg. ID No. 110) ("Plaintiff does not contend that his rights were violated during the suspicion of drunk driving stop.").

As a preliminary note, Mitchell does not have standing to bring a claim premised on a violation of Bush's constitutional rights. *Barber v. Overton*, 496 F.3d 449, 458 (6th Cir. 2007) (affirming that an individual does not have standing to challenge being injured as a result of the government's violation of another person's rights, no matter how interrelated the harms suffered). However, "a passenger may bring a Fourth Amendment challenge to the legality of a traffic

-9-

stop." *Brendlin v. California*, 551 U.S. 249, 259 (2007). The Court will evaluate Mitchell's alleged seizure in this context.

Under the facts alleged by Mitchell, Defendants' stop of Bush was lawful because the vehicle had a faulty light. Dkt. No. 1, p. 3 (Pg. ID No. 3); *see United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (stating that "police may make a stop when they have probable cause to believe a civil traffic violation has occurred"); MICH. COMP. LAWS § 257.683(1) ("A person shall not drive . . . a vehicle ... [that] is not at all times equipped with lamps and other equipment in proper condition . . . ."). Additionally, Mitchell does not appear to dispute that the officers had the right to impound Bush's car after Bush was found to be driving on a suspended license and was arrested while attempted to flee from law enforcement. Dkt. No. 1, p. 4 (Pg. ID No. 4); *see People v. Toohey*, 438 Mich. 265, 279–80, 475 N.W.2d 16, 23 (1991).

Police officers may also order drivers and passengers out of a vehicle during a traffic stop without offending the Fourth Amendment. *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). Since Bush's car could not be impounded while Mitchell remained inside of it, it was necessary for Mitchell to step out of Bush's vehicle. Accordingly, up until this point in the second stop, Mitchell does not have a legally valid claim that his Fourth Amendment rights were violated by an unlawful seizure.

Nevertheless, in order to frisk a passenger, the police must have reasonable suspicion that the passenger is armed and dangerous. *United States v. Noble*, 762 F.3d 509, 521 (6th Cir. 2014). In *Arizona v. Johnson*, 555 U.S. 323, 327 (2009), the Supreme Court stated:

> For the duration of a traffic stop, we recently confirmed, a police officer effectively seizes "everyone in the vehicle," the driver and all passengers. Accordingly, we hold that, in a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.

(internal citations omitted).

Mitchell's Complaint argues that he was subject to a warrantless search and seizure without probable cause, in violation of his Fourth Amendment rights. Dkt. No. 1, p. 6 (Pg. ID No. 6). Yet, as the Supreme Court stated above in *Arizona v. Johnson*, it is reasonable suspicion—not probable cause—that is needed to perform a search on a vehicle's passenger. 555 U.S. at 327. Accordingly, since Mitchell has alleged that Bush's vehicle had a faulty light, which gave the police probable cause to perform a traffic stop for a vehicle code violation, only reasonable suspicion was needed to search Mitchell's person or detain him beyond completion of the traffic infraction. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1616–17 (2015).

Considering Mitchell's pleadings in light of the appropriate standard—reasonable suspicion—and accepting all of Mitchell's factual allegations as true, *see Lambert*, 517 F.3d at 439, Mitchell's Complaint states a sufficient claim for an unlawful search of his person, as there are no allegations that the officers had reasonable suspicion to search or extend his seizure at the stop. However, as Count II suffers from the same deficiencies as Count I—identifying which Defendants committed the allegedly illegal acts in the Response and not in the Complaint—the Court orders Mitchell to amend this part of his Complaint as well.

### 2.  Search and Seizure of During the First Traffic Stop

Regarding Mitchell's Count II allegations about the first stop that evening, it is not clear to the Court whether his counsel reviewed the Complaint prior to filing the Response to the Motion to Dismiss. Plaintiff's Response states, in the section titled "The Prior Police Stop Is Irrelevant to the Instant Case":

> Defendants' [sic] erroneously argue in their Motion that Plaintiff's Complaint does not contain any facts regarding a violation of Plaintiff's constitutional rights for being stopped for suspicion of drunk driving. *However, Plaintiff does not contend that his rights were violated during the suspicion of drunk driving stop*. Contrary to Defendants [sic] belief, *Plaintiff made no reference in his complaint to said stop*. Since there are no allegations regarding this stop that occurred earlier in the day, the topic is mute.

Dkt. No. 15, p. 16 (Pg. ID No. 110) (emphasis added). However, in Count II, the Complaint states:

31. At all material times, the Defendants acted under color of law and unreasonable when they violated Plaintiff' [sic] Fourth Amendment rights and illegally searched within Plaintiff' [sic] vehicle and Plaintiff' [sic] person and seized his vehicle.

Dkt. No. 1, p. 6 (Pg. ID No. 6). The only stop that involved Mitchell's vehicle was the first stop where he was pulled over on suspicion of drunk driving, received a citation for his open alcohol, and had his car impounded. *Id*. at 3. Accordingly, the allegations in Count II, Paragraph 31 can only refer to the prior stop, which Mitchell now denies ever referencing. Accordingly, the Court assumes that Mitchell has conceded that his rights were not violated during the first traffic stop—the only instance where his vehicle was searched and seized.

On this note, the Court would like to remind Plaintiff's counsel of their obligations under Rule 11 of the Federal Rules of Civil Procedure. When presenting a pleading or paper to the Court, attorneys are required to make a reasonable inquiry into factual and legal contentions or denials. FED. R. CIV. P. 11(b). The Complaint itself is only 12 pages. It is reasonable for the Court to expect Plaintiff's counsel to read the Complaint prior to filing a response to a Motion to Dismiss.

Any and all allegations in Count II that Mitchell was illegally searched and seized during the first stop are dismissed, as Mitchell conceded that his rights were not violated in that stop.

-13-

**C.     Count III: *Monell* Claim Against City of Warren**

In Mitchell's third count, he seeks to hold Defendant City of Warren liable for the alleged violations of his civil rights. Dkt. No. 1, pp. 7–9 (Pg. ID No. 7–9). Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. at 691. Instead, municipal liability arises when the execution of a government's official policy or custom inflicts injury upon a plaintiff. *Id*. at 694. "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

It is not enough that a municipal action, such as an allegedly inadequate training program, is negligent; rather, the action must be taken with "deliberate indifference" as to the known or obvious consequences. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 398 (1997). Here, Defendants argue that Mitchell's claim against the City of Warren should be dismissed because it is impermissibly generic and conclusory. Dkt. No. 13, p. 26 (Pg. ID No. 72).

In his Complaint, Mitchell alleges that the City of Warren had the following customs, policies, or practices, which resulted in his injury:

    a) Failing to supervise officers to prevent violations of citizens' constitutional rights;

-14-

   b) Failure to adequately train officers to properly identify themselves to citizens at traffic stops;[3]

   c) Failure to adequately train officers regarding safeguarding citizens during arrests;

   d) Failing to adequately train and/or supervise officers regarding the proper use of force;

   e) Failing to adequately train and/or supervise officers regarding legal searches;

   f) Failing to control and/or discipline officers known to harass, intimidate, and/or abuse citizens;

   g) Failing to supervise, review, and/or discipline officers whom Defendant City of Warren knew or should have known were violating or were prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in such conduct;

   h) Failing to require compliance of its officers and/or employees with established policies and/or procedures and/or rules of the City of Warren and discipline or reprimand officers who violate these established policies;

   i) Failing to protect detainees/arrestees.

Dkt. No. 1, pp. 7–8 (Pg. ID No. 7–8).

In his Response, Mitchell asserts that "there can be no dispute that Plaintiff's Complaint has stated enough 'to raise a reasonable expectation that discovery will reveal evidence of [illegal conduct].' " Dkt. No. 15, p. 25 (Pg. ID No. 119) (alteration in original) (appearing to quote *Twombly*, 550 U.S. at 556). Mitchell

---

[3] The Court finds this allegation to be misplaced, as Mitchell never alleged that officers failed to properly identify themselves during either of the two stops.

-15-

relies on discovery to "flesh[] out" the facts "that will either support or refute [his] claim." *Id*. To support his contention that these allegations are sufficient, Mitchell again cites to the 2011 opinion in *Young v. City of Highland Park*, No. 11-12780, 2011 WL 5215154, at *3 (E.D. Mich. Nov. 2, 2011) (denying motion to dismiss based on substantially similar allegations).

In *Young*, the case cited by Mitchell, the plaintiff combined these boilerplate allegations of deliberate indifference with additional allegations that "Defendants' conduct was so reckless so as to demonstrate a substantial lack of concern for whether an injury resulted" and that "Defendants' acts and/or indifference and/or omissions were the direct and proximate cause of Plaintiff's injuries." 2011 WL 5215154, at *3 (alleging that the defendants engaged in reckless conduct where they "forcefully grabbed" the plaintiff, "violently threw" him to the ground, and "twist[ed]" the plaintiff's arms while he "begged Defendants to stop hurting him"). According to the Court in *Young*, the totality of these allegations constituted "*the bare minimum* necessary to meet the pleading requirements of the Federal Rules." *Id*. (emphasis added). The factual allegations in the present case fall short of what was alleged in *Young*.

Defendants point to the more recent opinions in *Flanigan v. Cty. of Oakland*, No. 15-12504, 2016 WL 304763, at *4 (E.D. Mich. Jan. 26, 2016), *Jackson v. City of Highland Park*, No. 15-10678, 2015 WL 3409013, at *5 (E.D. Mich. May 27,

2015), and *Curney v. City of Highland Park*, No. 11-12083, 2012 WL 1079473, at *3 (E.D. Mich. Mar. 30, 2012). In those three cases, substantially similar, if not identical, municipal liability claims were dismissed for failure to allege facts establishing a policy or custom. In *Flanigan*, the Court found allegations like those above to be nothing more than "formulaic recitation[s]" of one of the elements of the plaintiff's claim, insufficient to withstand a motion to dismiss. 2016 WL 304763, at *4 (quoting *Iqbal*, 556 U.S. at 678, 681) (alteration in original). *See also Denard v. Williams*, No. 10-14023, 2011 WL 4374534, at *4 (E.D. Mich. Sept. 20, 2011) ("To merely state that a municipality has a policy or custom is not enough; a plaintiff must allege facts demonstrating [the] municipality's policy, such as examples of past situations where law enforcement officials have violated constitutional rights.").

In *Curney*, the Court expressly disapproved of using discovery as a fishing expedition to discover the facts needed to bring a proper municipal liability claim against the defendant, as Mitchell seeks to do here. 2012 WL 1079473, at *5. Although a party may have been able to use discovery to gather facts necessary for his claims prior to *Twombly* and *Iqbal*, it is no longer permissible for a party to "use the discovery process to obtain [the facts it needs to support its claim] after filing suit." *Holliday v. Wells Fargo Bank, NA*, 569 F. App'x 366, 372 (6th Cir.

2014) (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011)) (alteration in original).

Based on the Court's understanding of *Twombly* and *Iqbal*, Mitchell needs to allege some facts in his Complaint to support the conclusory allegations that the City of Warren failed to adequately train and supervise its officers, or did not discipline officers that it knew or should have known would abuse citizens and violate their rights. Reciting the standard for demonstrating the existence of an illegal policy—"the existence of a policy of inadequate training or supervision" or "the existence of a custom of tolerance or acquiescence of federal rights violation"—is not the same thing as actually alleging facts that make the existence of such a policy facially plausible. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Accordingly, Count III against the Municipal Defendants must be dismissed. If discovery related to Mitchell's surviving claims against the officers reveals facts supporting liability for the conduct of the City of Warren, Mitchell is free to seek leave to amend his Complaint. Nevertheless, Mitchell and his counsel are not permitted to go on a fishing expedition and must tailor their discovery requests specifically to what is alleged against the officers in Counts I and II.

**D.    Defendants' Claim of Qualified Immunity**

Defendants also claim in their Motion to Dismiss, that should claims against the individual officers be allowed to proceed, the Defendant Officers are entitled to qualified immunity. Dkt. No. 13, p. 21 (Pg. ID No. 67).

"Although violations of constitutional rights by government officials acting under color of state law are generally subject to redress under 42 U.S.C. § 1983, the doctrine of qualified immunity shields officials from liability 'insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.' " *Peatross v. City of Memphis*, No. 15-5288, 2016 WL 1211916, at *4 (6th Cir. Mar. 29, 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly" with "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is important to resolve qualified immunity questions at the earliest possible stage, as the immunity is effectively lost, if the case is erroneously permitted to go to trial. *Peatross*, 2016 WL 1211916, at *4.

There is a two-step inquiry to determine whether government officials are entitled to qualified immunity. *Id*. at *5. First, do the facts, when viewed in the light most favorable to the plaintiff, show that the officers' conduct violated a

constitutional right? *Id*. Second, was the right clearly established at the time of the violation? *Id*. To defeat the defense of qualified immunity, "Plaintiff[] bear[s] the burden of showing that a clearly established right has been violated and that the official's conduct caused that violation." *Essex v. Cty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013).

Here, when the facts are viewed in the light most favorable to Mitchell, the allegations support the conclusion that Defendants committed a constitutional violation. Mitchell alleges that he was unlawfully searched after the second traffic stop, then pushed and pulled so aggressively by "officers" that he fell to the ground and broke his arm. Under Mitchell's version of the facts, there were several constitutional violations: (1) the illegal seizure when he was held beyond the necessary duration of the second traffic stop; (2) the illegal search of Mitchell's person; and (3) the use of excessive force. The lone remaining inquiry is whether or not the Defendants violated clearly established law.

An officer is entitled to qualified immunity where "clearly established law does not show that the [action] violated the Fourth Amendment." *Pearson*, 555 U.S. at 243–44. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.' " *Id*. (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

The right to be free of an unreasonable investigatory stop was clearly established in *Terry*. The right to be free of an unreasonable stop-and-frisk was clearly established in *Arizona v. Johnson*. The right to be free of excessive force was clearly established in *Graham*. Accordingly, the Court shall deny Defendants' request for qualified immunity. Defendants may raise a qualified immunity defense again at other stages of the litigation, including after discovery in a motion for summary judgment or as an affirmative defense at trial. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

## V. CONCLUSION

Accordingly, for the reasons discussed in detail above, the Court **GRANTS** in part and **DENIES** in part Defendants' Motions to Dismiss [13]. Mitchell is ordered to amend his Complaint within 15 days of this order to more clearly state his claims in Counts I and II, based on the additional allegations from his Response brief. Count III of the Complaint is dismissed without prejudice.

IT IS SO ORDERED.

Dated:     June 6, 2016

                                   s/Gershwin A. Drain
                                   HON. GERSHWIN A. DRAIN
                                   United States District Court Judge